IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OMS Investments, Inc. and The Scotts Company, LLC, | : | |
| | : | Civil Action 2:07-cv-63 |
| Plaintiffs | | |
| | : | Judge Marbley |
| v. | | |
| | : | Magistrate Judge Abel |
| Lebanon Seaboard Corporation, | | |
| | : | |
| Defendant | | |

# ORDER

This matter is before the Magistrate Judge on defendant Lebanon Seaboard Corporation's ('Lebanon") September 30, 2008 motion to compel production of consumer data documents (doc. 64).  Plaintiffs OMS Investments, Inc. and The Scotts Company LLC's ("Scotts") December 10, 2008 motion for leave to file a supplemental memorandum in opposition to Lebanon's motion to compel (doc. 76); defendant Lebanon Seaboard Corporation's January 5, 2009 cross motion for leave to file a response to plaintiff's supplemental memorandum (doc. 79) are also pending.

I.    Background

The complaint alleges that Lebanon has adopted a trade dress for its garden weed preventer product that is confusingly similar to Scotts' trade dress for its corresponding MIRACLE-GRO® garden weed preventer product. It further alleges that Lebanon has adopted a color-coded trade dress for its lawn fertilizer and weed control

products that is confusingly similar to the color scheme Scotts uses in the trade dress for its corresponding TURF BUILDER® lawn fertilizer and fertilizer-plus-weed control product line.

**II.  Arguments of the Parties**

    **A.  Defendant Lebanon Seaboard Corporation**

Defendant Lebanon seeks to compel the production of certain documents from plaintiffs:

- All e-mails and website inquiries received by Plaintiffs, including but not limited to, from www.miraclegro.com, www.miracle-gro.com, and www.scotts.com concerning or relating to Plaintiffs' Miracle-Gro® Weed Preventer product at issue, Miracle-Gro® Weed Preventer Plus Plant Food product at issue, Miracle- Gro® Shake 'n Feed® All Purpose Plant Food Plus Weed Preventer product at issue, Scotts Turf Builder Fertilizer with Halts Crabgrass Preventer product at issue, Scotts Turf Builder with Plus 2 Weed Control product at issue, Scotts Turf Builder Lawn Fertilizer with 2% Iron product at issue, Scotts Southern Turf Builder Lawn Fertilizer with 2% Iron product at issue, Scotts Turf Builder with Summerguard product at issue, and any of Lebanon's products, from December 1993 to present.

- All telephone calls received by Plaintiffs and call logs of calls received by Plaintiffs concerning or relating to Plaintiffs' Miracle-Gro® Weed Preventer product at issue, Miracle-Gro® Weed Preventer Plus Plant Food product at issue, Miracle-Gro® Shake 'n Feed® All Purpose Plant Food Plus Weed Preventer product at issue, Scotts Turf Builder Fertilizer with Halts Crabgrass Preventer product at issue, Scotts Turf Builder with Plus 2 Weed Control product at issue, Scotts Turf Builder Lawn Fertilizer with 2% Iron product at issue, Scotts Southern Turf Builder Lawn Fertilizer with 2% Iron product at issue, Scotts Turf Builder with Summerguard product at

>issue, and any of Lebanon's products, from December 1993 to present.[1]

Lebanon argues that it needs the consumer contact data to assess plaintiffs' evidence supporting their allegation of consumer confusion. According to defendant, the consumer contact data will demonstrate consumer reaction to plaintiffs' packaging and weed preventer products and to Lebanon's PREEN® weed preventer packaging and products from the inception of plaintiffs' weed preventer products. In response to defendant's discovery requests for consumer contacts evidencing actual or potential consumer confusion from 2005 to the present, September 30, 2008 Supplemental Memorandum, Exhs. B and C, docs 64-3 and 64-4, plaintiffs produced three pages of consumer contact data that they allege contain records of telephone calls made from 2005 to 2008 to plaintiffs in which the PREEN® brand and/or the word Lebanon was mentioned by the caller. *Id.*, Exh. A, doc. 64-2. Lebanon asserted that rather than retain an expert to conduct a survey to major consumer confusion, plaintiffs intend to rely on the customer contacts documented in Exhibit A. However, plaintiffs responded that they have always intended to retain an expert to conduct a survey to determine consumer confusion. Lebanon maintains that without knowing the entire content of the consumer contact data, it will not have a fair opportunity to evaluate the data and have its expert witness draw his or her own conclusions regarding what the excerpts

---

[1]The documents mentioned here differ from those outlined in Lebanon Seaboard's second set of request for production of documents and things. *See* doc. 65-5 at pp. 3-4, doc. requests nos. 75 & 76.

provided by plaintiffs actually show a reader in the context of all the calls and messages that plaintiffs have received since 1993, when the parties first began competing with each other with yellow containers with red caps and red, yellow, and green labels on the containers. Lebanon maintains that it is highly likely that the same questions contained in the log reports provided by plaintiffs have been asked by customers of Scotts since 1993.

Lebanon maintains that Scotts invites customers to call it for any lawn and garden advice. Because there is no limitation of plaintiffs' offers to help customers, it suggests that plaintiffs can and will answer any lawn and garden question a person has, presumably even those questions concerning a competitor's product. Defendant contends that plaintiffs have refused to identify how many contacts it has with consumers per day or other stated time period.  Plaintiffs have also refused to identify how many contacts were evaluated to develop the list of contacts it presented to defendant.   Lebanon argues that the parties have competed for years with the same colors on their labels, the same texts on their labels and advertising, and the same color containers. Viewing the consumer contact data will demonstrate whether there has not been any change in the nature and volume of the contacts concerning PREEN® and its new packaging.

        **B.**       **Plaintiffs OMS Investments, Inc. and The Scotts Company LLC**

Plaintiffs argue that beginning in 1986 defendant used the same basic trade dress on its PREEN® garden Weed Preventer until 2005, when Lebanon radically altered its

packaging to a packaging that is confusingly similar to the trade dress Scotts uses on its MIRACLE-GRO® Weed Preventer. Scotts argues that it would be unduly burdensome for it to search for, collect, and produce every single email, website inquiry, telephone call log, or record of every single telephone call, letter postcard, or other documented contact, as well as plaintiff's responses and related documents.

Plaintiffs maintain that the reason defendant is seeking these documents is because Nationwide Mutual Insurance company and Nationwide Agribusiness Insurance Company ("Nationwide") filed a motion to intervene in this action. Nationwide asserts that its insurance coverage for Lebanon ended in 2003, two years before defendant started using the new packaging. Plaintiffs argues that defendant's effort to compel production of the pre-2005 customer contacts is an effort to expand the scope of this litigation and obtain insurance coverage under earlier Lebanon insurance policies.

Plaintiffs maintain that defendant is seeking information about products, issues, packages, and trade dresses that are not at issue in this litigation. Plaintiffs offered to provide defendant with a log of every contact Scott has received where the consumer mentioned PREEN or Lebanon Seaboard in any way from 2005 to the present, but defendant rejected this compromise. Plaintiffs also dispute defendant's assertion that Scotts intends to rely solely on the evidence of actual confusion included in the documents Scotts produced as OMS 15086-88. Scotts intends to conduct a survey, which will demonstrate confusion with regard to the parties' lawn products.

5

Plaintiff further argues that the document requests are overly broad, unduly burdensome, unduly expensive, and oppressive. The requests seek information about products, issues, packages and trade dresses that are not at issue in this litigation. According to plaintiffs, defendant's definition of "plaintiffs' products" is over broad, unduly burdensome, vague and ambiguous, and seeks irrelevant documents that are not likely to lead to the discovery of admissible evidence because it includes products that Scotts has not claimed are being infringed by defendant's trade dress.

## II.     Supplemental Briefing

As a preliminary matter, plaintiffs' December 10, 2008 motion for leave to file a supplemental memorandum in opposition to Lebanon's motion to compel (doc. 76) and defendant's January 5, 2009 cross motion for leave to file a response to plaintiff's supplemental memorandum (doc. 79) are GRANTED.

On November 19, 2008, the Montgomery County, Ohio Court of Common Please held a hearing on Nationwide's motion for a temporary restraining order. Nationwide sought a ruling that it had no duty to defend Lebanon Seaboard in this action because the underlying events giving rise to Scotts' claims against Lebanon Seaboard occurred after Nationwide's policies issued to defendant had expired. On December 10, 2008, plaintiff's filed a motion for leave to file a supplemental memorandum in opposition to Lebanon Seaboard's motion to compel. Plaintiff asserts that counsel for defendant made statements during the TRO hearing supporting Scotts' position that the motion to

compel is an attempt to prevent Nationwide from terminating its defense of Lebanon Seaboard. Specifically, counsel for Lebanon Seaboard stated:

> The important thing, you noted that I stressed Supplemental Responses, because, as we mentioned off the record, discovery in federal court is still ongoing. We have depositions coming up at our office next month. We–we, meaning Lebanon Seaboard–has a motion to compel pending to obtain some discovery. I'm not sure off the top of my head when discovery cutoff is, but the fact remains, there is no guarantee that these are–these dates are set in stone. And until the federal court finds facts, Nationwide is gonna have to–they're still on the hook as far as these discovery responses are concerned from June of–June of 2008.

Doc. 76-2, at p. 68.

In response, Lebanon Seaboard argues that Scotts' position is ridiculous because Scotts is essentially arguing that Lebanon Seaboard is attempting to obtain the pre-2005 data in order to establish that it is actually liable for infringement prior to the expiration of Nationwide's policy coverage. Defendant also asserts that plaintiffs have not amended the complaint to reflect that it does not concern infringement prior to 2005 because they believe that issue is still open.

Plaintiffs maintain that this mischaracterizes its position. Plaintiffs also contend that they have been very specific about which packaging is allegedly infringing Scotts' trade dress. Scotts pled the time frame during which that packaging was used on information and belief because it does not have access to the information necessary to prove exactly when the packaging in question was used. The question of when the packaging at issue was used can only be answered by defendant. Additionally, Scotts maintains that Lebanon Seaboard has failed to stand by the dates it has previously

asserted. Scotts maintains that defendant's motion to compel is an effort to keep the timing of the infringement at issue to ensure Nationwide's continued defense.

   III.   **Discussion**

Rule 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The evidence sought need only "appear[] reasonably calculated to lead to the discovery of admissible evidence." *Id.* A motion to compel will be denied, however when the benefits are outweighed by its burden even though the information sought is relevant. Fed. R. Civ. P. 26(b)(2)(C)(iii).

Defendant maintains that it requires the consumer contact data for the years prior to the use of the alleged infringing packaging to demonstrate that there has been no change in the quantity or nature of the consumer contacts that Scotts has received despite the new packaging. Lebanon Seaboard argues that the "cherry-picked" consumer contact data put forth by Scotts falls into one of three categories:

- Scotts Product Inquiries: Inquiries to Scotts regarding how and whether Lebanon's products interact with Scotts's products, such as how to use the parties' products together to benefit the consumer. *See, e.g.*, Exhibit A, 4/5/05 entry "What is the [Scotts brand] spreader setting for Lebanon product" and 5/5/06 "when to apply Preen, before or after MG Shake."

- Irrelevant Inquiries: Calls that have nothing to do with the products or issues in this suit. *See, e.g.*, Exhibit A, 8/22/06 "MG does have a weed preventer?" and 2/19/07 "I am getting ready to spread Lebanon Team 2G Preemergent Herbicide on my Centipede grass."

- No Competitors Inquiries: Inquiries suggesting that some people believe that the largest lawn and garden company in the country is the only lawn and garden company in the country. *See, e.g.*, Exhibit A, 3/12/07 "Wants to know if we still carry a product called Preen, that you could buy in 5 gl containers, and use around the yard" and 11/19/07 "consumer wants to know where to purchase Preen—consumer wants to [sic] someone else that know [sic] the product he insist this is our product—what type of pre-emerge product you have."

Doc. 64, at p. 10. Lebanon Seaboard believes that reviewing the consumer contact data prior to the use of the allegedly infringing packaging will reveal similar contacts. Defendant has adequately demonstrated that consumer contacts for a period of time before the 2005 change in packaging is arguably relevant to its defense that is that there is no consumer confusion.  Lebanon has also demonstrated that the total number of consumer contacts is arguably relevant to evaluating the evidence of consumer confusion.  *See, Savanna College of Art and Design, Inc. v. Houeix*, 369 F. 2nd 929, 955 (S. D. Ohio 2004).  However, Lebanon Seaboard has made no showing that it needs 12 years worth of pre-2005 consumer contacts.  Two years of consumer contacts should be sufficient to establish a base line.

Consequently, Lebanon Seaboard Corporation's September 30, 2008 motion to compel production of consumer data documents (doc. 63) is GRANTED in part. Plaintiffs are ORDERED to produce the e-mail, website, and telephone inquiries from 2003 to the present that specifically mention Lebanon or PREEN in any manner.  They are also ORDERED to provide Lebanon with an affidavit(s) stating the total number of

consumer contacts for the years 2003 through 2008. Lebanon has failed to demonstrate that any additional documents or information are relevant.

Under the provisions of 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P., and Eastern Division Order No. 91-3, pt. F, 5, either party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by the District Judge. The motion must specifically designate the Order, or part thereof, in question and the basis for any objection thereto. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

s/ Mark R. Abel<br>United States Magistrate Judge